

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JOEL P FAHNESTOCK | Case Number: 1416-CV05138 |
|---|---|
| Plaintiff/Petitioner:<br>GLEN E CUSIMANO | Plaintiff's/Petitioner's Attorney/Address:<br>LINDA S DICKENS<br>27 CORPORATE WOODS<br>10975 GRANDVIEW DRIVE<br>SUITE 190<br>OVERLAND PARK, KS 66210 |
| vs. | |
| Defendant/Respondent:<br>LOUNGE KC LLC<br>DBA: MOSAIC LOUNGE | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to: **THE CORDISH COMPANIES, INC.**

601 EAST PRATT ST
BALTIMORE, MD 21202



COURT SEAL OF

JACKSON COUNTY

You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

<u>26-MAR-2014</u>
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

EXHIBIT
3

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division: | Case Number: 1416-CV05138 |
|---|---|
| JOEL P FAHNESTOCK | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address: |
| GLEN E CUSIMANO | LINDA S DICKENS |
| | 27 CORPORATE WOODS |
| | 10975 GRANDVIEW DRIVE |
| | SUITE 190 |
| vs. | OVERLAND PARK, KS 66210 |
| Defendant/Respondent: | Court Address: |
| LOUNGE KC LLC | 415 E 12th |
| DBA: MOSAIC LOUNGE | KANSAS CITY, MO 64106 |
| Nature of Suit: | |
| CC Other Tort | (Date File Stamp) |

## Summons for Service by First Class Mail

The State of Missouri to: **THE CORDISH COMPANIES, INC.**

**601 EAST PRATT ST**
**BALTIMORE, MD 21202**



*COURT SEAL OF*

*JACKSON COUNTY*

     You are summoned and, within 30 days after the enclosed acknowledgment is filed, you must file an answer to the enclosed petition with the clerk of this court and also must serve this answer upon Plaintiff's'/Petitioner's attorney at the above address. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

<u>26-MAR-2014</u>
Date Issued

_____
Clerk

Further Information:

## Directions to Clerk

    The clerk should issue one copy of this summons for each Defendant/Respondent to be served by first class mail. Under Section 506.150.4, RSMo, service by first class mail may be made by Plaintiff/Petitioner or any person authorized to serve process under Section 506.140, RSMo.

OSCA (7-99) SM80 (JAKSFCM) *For Court Use Only: Document ID# 14-SFCM-46*      1 of 2

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

# FORM NO. 4-B.

## (CIRCUIT DIVISION CASES)

## NOTICE AND ACKNOWLEDGMENT FOR SERVICE BY MAIL
## CIRCUIT COURT FOR JACKSON COUNTY
## KANSAS CITY DIVISION

GLEN CUSIMANO,                                    )
               Plaintiff,                       )
                                )        Case No. 1416-CV05138
v.                                               )
                                )        Division No. 9
LOUNGE KC, LLC                                   )
d/b/a Mosaic Lounge;                             )
                                )
ENTERTAINMENT CONCEPTS                           )
INVESTORS, LLC                                   )
a/k/a Entertainment Consulting                   )
International, LLC;                               )
                                )
FIRST RESPONSE, INC.; and                        )
                                )
The CORDISH COMPANIES, Inc.                      )
               Defendants.                  )

## NOTICE

TO:    THE CORDISH COMPANIES, INC.
       **C/O RC Ventures**
       6th Floor, 601 East Pratt Street
       Baltimore, MD 21202
       **Registered Agent for Defendant The Cordish Companies, Inc.**

The enclosed summons and petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgment part of this form and return one copy of the completed form to the sender within thirty days of ____March 26, 2014____.
(insert date of mailing)

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate

under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign the acknowledgment below. If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

I DECLARE, UNDER PENALTY OF PERJURY, THAT THIS NOTICE WAS MAILED ON

___March 26, 2014___.
(insert the date)


_Linda S Dicker_
Signature


ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND PETITION

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.


_____
Signature


_____
Relationship to Entity/Authority
Receive Service of Process


_____
Date Signed

# FORM NO. 4-B.

## (CIRCUIT DIVISION CASES)

## NOTICE AND ACKNOWLEDGMENT FOR SERVICE BY MAIL
## CIRCUIT COURT FOR JACKSON COUNTY
## KANSAS CITY DIVISION

| | |
|---|---|
| GLEN CUSIMANO,<br>      Plaintiff,<br><br>v.<br><br>LOUNGE KC, LLC<br>d/b/a Mosaic Lounge;<br><br>ENTERTAINMENT CONCEPTS<br>INVESTORS, LLC<br>a/k/a Entertainment Consulting<br>International, LLC;<br><br>FIRST RESPONSE, INC.; and<br><br>The CORDISH COMPANIES, Inc.<br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1416-CV05138<br><br>   Division No. 9 |

## NOTICE

TO:    THE CORDISH COMPANIES, INC.
        C/O **RC Ventures**
        6th Floor, 601 East Pratt Street
        Baltimore, MD 21202
        **Registered Agent for Defendant The Cordish Companies, Inc.**

The enclosed summons and petition are served pursuant to Missouri <u>Supreme Court Rule 54.16</u>.

You may sign and date the acknowledgment part of this form and return one copy of the completed form to the sender within thirty days of _____March 26, 2014_____.
(insert date of mailing)

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate

under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days of the date you sign the acknowledgment below. If you fail to do so, judgment by default may be taken against you for the relief demanded in the petition.

I DECLARE, UNDER PENALTY OF PERJURY, THAT THIS NOTICE WAS MAILED ON

___March 26, 2014___.
(insert the date)


_____
Signature


### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND PETITION

I declare, under penalty of filing a false affidavit, that I received a copy of the Summons and of the Petition in the above captioned matter.


_____
Signature


_____
Relationship to Entity/Authority
Receive Service of Process


_____
Date Signed



**DICKENS**
**LAW LLC.**
Attorneys and Counselors at Law

27 Corporate Woods • Suite 190
10975 Grandview Drive
Overland Park, KS 66210

The Cordish Companies
Inc.

601 E. Pratt Street
Baltimore, MD
21202



U.S. POSTAGE PAID
SHAWNEE MISSION, KS
66213
MAR 26 '14
AMOUNT
$8.24

7014 0150 0002 0914 9094



27 Corporate Woods, Suite 190
10975 Grandview Street
Overland Park, KS 66210

DICKENS
LAW LLC.
Attorneys and Counselors at Law

Dickens Law LLC
27 Corporate Woods, Suit 190
10975 Grandview Drive
Overland Park, KS  66210



# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

GLEN E CUSIMANO,

                     **PLAINTIFF(S),**          **CASE NO. 1416-CV05138**
**VS.**                                                **DIVISION 9**

LOUNGE KC LLC ET AL,

                     **DEFENDANT(S),**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE AND ORDER FOR MEDIATION

---

NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JOEL P FAHNESTOCK** on **16-JUN-2014** in **DIVISION 9** at **09:00 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

At the Case Management Conference, counsel should be prepared to address at least the following:

     a.      A trial setting;

     b.      Expert Witness Disclosure Cutoff Date;

     c.      A schedule for the orderly preparation of the case for trial;

     d.      Any issues which require input or action by the Court;

     e.      The status of settlement negotiations.

Case 4:14-cv-00463-DW    Document 1-3    Filed 05/23/14    Page 11 of 36

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ JOEL P FAHNESTOCK
JOEL P FAHNESTOCK, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
LINDA S DICKENS, PO BOX 480334, KANSAS CITY, MO 64148

Defendant(s):
LOUNGE KC LLC
FIRST RESPONSE, INC.
THE CORDISH COMPANIES, INC.
ENTERTAINMENT CONCEPTS INVESTORS, LLC

Dated: 03-MAR-2014

**Jeffrey A. Eisenbeis**
Court Administrator

Case 4:14-cv-00463-DW   Document 1-3   Filed 05/23/14   Page 12 of 36

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**KANSAS CITY DIVISION**

GLEN CUSIMANO, )
           Plaintiff, )
            ) Case No. 1416-CV05138
v. )
            ) Division No. 9
LOUNGE KC, LLC )
d/b/a Mosaic Lounge; )
            )
ENTERTAINMENT CONCEPTS )
INVESTORS, LLC )
a/k/a Entertainment Consulting )
International, LLC; )
            )
FIRST RESPONSE, INC.; and )
            )
The CORDISH COMPANIES, Inc. )
           Defendants. )

<u>AMENDED COMPLAINT FOR DAMAGES</u>

Comes now Plaintiff, by and through his counsel of record, and hereby states the following as his Complaint for Damages pursuant to Missouri law:

**I.    FACT BACKGROUND**

1.    Plaintiff Glen Cusimano (hereafter "Cusimano") is an individual of African American descent who resides at 3720 West 154th Street, Overland Park, Kansas.

2.    Defendant Lounge KC, LLC ("Lounge KC" or "Mosaic") is a Missouri limited liability company doing business as Mosaic Lounge. Lounge KC/Mosaic's principal place of business is located in the Power and Light District in downtown Kansas City at the location of 1331 Walnut, Kansas City, Missouri 64105. The Missouri Secretary of State lists Lounge KC's registered agent for service of process as CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

Electronically Filed - Jackson - Kansas City - March 03, 2014 - 05:16 PM

3.  Defendant First Response, Inc. ("First Response") is a Kansas corporation registered to do business in Missouri. The Missouri Secretary of State's Office lists First Response's registered agent for service of process as Melinda McLaughlan, 2506 NE 103rd Terrace, Kansas City, Missouri 64155.

4.  Defendant The Cordish Companies, Inc. ("Cordish") is a Maryland corporation which is not registered to do business with the Missouri Secretary of State. However, Cordish and/or its subsidiaries own, operate and/or lease all of the property located in the Power and Light (Entertainment) District in downtown Kansas City. Cordish may be served through its registered agent in Maryland: RC Ventures, Inc. 6th Floor, 601 East Pratt Street, Baltimore, Maryland 21202.

5.  Entertainment Concepts Investors, LLC, also known as Entertainment Consulting International, LLC ("ECI") is a Maryland limited liability company registered to do business in Missouri. The Missouri Secretary of State's Office lists Entertainment Concepts Investors' registered agent for service of process as CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101. The Missouri Secretary of State's Office lists Entertainment Consulting International's registered agent for service of process as Richard T. Bryant, 1102 Grand Boulevard #804, Kansas City, Missouri 64106.

6.  The District includes such properties as Angels Rock Bar ("Rock Bar"), Mosaic Lounge ("Mosaic"), and Hotel Nightclub ("Hotel Nightclub"), amongst others.

7.  The Power and Light District is largely composed of clubs surrounding a spacious enclosed patio with firepits, a jumbotron (giant elevated television/video screen), and more, referred to as "The Living Room" or the "Plaza" area.

2

lectronically Filed - Jackson - Kansas City - March 03, 2014 - 05:16 PM

8.  For purposes of this Complaint, the entire entertainment area will be referred to hereafter as "Power and Light;" the common areas such as the Living Room and adjoining walkways are hereafter referred to as "the Living Room," and the space inside each club will be referred to by the name of the club such as "Mosaic," "Rock Bar," or "Hotel Nightclub."

9.  All facts recounted below relate to or occurred within either one of the clubs or the Living Room (i.e., common area) at Power and Light.

10. Glen Cusimano was hired to work as a security guard at Rock Bar in Power and Light during 2009.

11. Almost immediately upon hiring, Cusimano began to notice racially discriminatory practices and procedures at clubs and throughout the Living Room. In particular, he observed that African Americans were more frequently turned away from clubs, or forced to wait longer in line, than were non-blacks.

12. Cusimano also noticed that African Americans were also frequently harassed by security. For example, guards would frequently tell African American patrons that they could not enter a club because they were in violation of the dress code, even though no violation had, in fact, occurred.

13. Cusimano also noticed that guards would excessively question African-American persons and groups at the entrances to clubs while letting similarly-dressed Caucasians pass by and enter.

14. When such excessive questioning eventually elicited a frustrated reaction from the targeted African American person or group, the guards would then refuse them admission, claiming the patron(s) had "displayed aggression" in violation of club or District rules.

15. Cusimano was eventually promoted to the position of General Manager of Rock Bar.

3

lectronically Filed - Jackson - Kansas City - March 03, 2014 - 05:16 PM

16. At the same time, Cusimano was appointed to the position of security liaison for the entire Power and Light District. In this position, Cusimano reported to a representative of Cordish.

17. As security liaison, Cusimano regularly coordinated with First Response, a private security company, and the Kansas City, Missouri Police Department, which had jurisdiction over the Power and Light.

18. Following this promotion, Cusimano was personally taught harassment techniques, such as those described above, by an officer of ECI.

19. Cusimano was later promoted to General Manager of Mosaic.

20. Cusimano was also eventually appointed the General Manager of Hotel Nightclub.

21. In these General Manager positions, Cusimano reported to Jake Miller, who worked for ECI.

22. ECI's Miller directly instructed Cusimano to implement the above-described techniques to keep "thugs" out of his clubs.

23. While Miller never specifically told Cusimano to target *African Americans*, Miller would frequently walk with Cusimano through the Living Room and make remarks like, "*How did these people get in*?!" Each time, Miller was referencing *African Americans males*.

24. Through these "references" from his boss, Cusimano believed he was being instructed to keep blacks out of the Living Room and his clubs, and that Miller regarded all African Americans males as "thugs."

25. Cusimano's duties at each of the clubs, including Mosaic, included every aspect of management such as coordinating security, conducting inventory, promoting and marketing the club, overseeing the booking of musical acts, DJs, and so on.

4

26.     Cusimano also oversaw the handling of all money for his clubs, and at Mosaic, Cusimano was one of four or five persons who had access to the safe where cash was stored.

27.     While Cusimano worked at the Living Room, Mosaic primarily played hip hop and rap music, and thus attracted more African Americans than did other clubs in the Living Room.

28.     In summer of 2012, Cusimano's superior, Jake Miller, ordered him to employ a "rabbit," i.e. a Caucasian male willing to start arguments with groups of African American patrons in order to get them kicked out of Power and Light.

29.     Cusimano's superiors told Cusimano to fill the position by finding someone who might be willing to take free drinks from Mosaic and occasional cash as payment for getting "thugs" ejected.

30.     This rabbit was supposed to hang around any black male(s) he saw, regardless of how well dressed, mannered, or educated they appeared, and then start an argument in front of the security guards.

31.     As soon as the argument started, security would move in and eject the participants from the Living Room. While the rabbit would also be ejected, he only had to walk around the corner and come in a different entrance.

32.     Miller instructed Cusimano to instruct the rabbit to always start the arguments in front of the security guards in the Living Room, to not let the arguments get physical, and to make sure he didn't "get his ass kicked."

33.     Cusimano understood that *no report would be created of the incidents or the arguments so long as they had not reached a physical altercation, and that Cordish/ECI/Lounge KC wanted to ensure no written records were created of these incidents or the identities of persons ejected from Power and Light.*

5

34. ECI/Cordish used a rabbit through much of Cusimano's tenure, starting in summer of 2012 and continuing through the summer of 2013. In the summer of 2013 alone, the rabbit was used approximately 20 to 30 times.

35. On August 10, 2013, Cusimano hurt his shoulder while breaking up a fight as part of his security duties. That same night, a shooting occurred in a nearby parking garage.

36. Three days later, Cusimano was told by his boss at ECI that there were too many "troublemakers" in the area, and that KCPD felt Mosaic was the root of the problem due to the clientele it was attracting.

37. Cusimano was then told that Mosaic was "going in a different direction" and that the club would no longer play *hip hop*, but instead play only electronic dance music.

38. Electronic Dance Music is sought out primarily by the Latino community, and by some whites; it is distinctly unpopular with African Americans.

39. Because Mosaic had generated huge revenues while playing *hip hop* music, Cusimano suspected that Cordish/ECI had made the change in Mosaic's music in order to stop attracting African Americans and thereby "lighten up Power and Light."

40. Cusimano's suspicions were confirmed when his superior visited Mosaic around this time and "freaked out" at the number of African American patrons.

41. On or about August 15, 2013, ECI's District Manager instructed Cusimano to fire both his sales manager and entertainment director/promoter due to "the change in direction."

42. On or about August 16, 2013, Cusimano had surgery on his injured shoulder due to the August 10th incident.

43. On or about August 23rd, Cusimano was called by the new ECI District Manager, Mark Mussellman, asking when he could come back to work. Cusimano replied that he needed

6

more time off, since his shoulder had not fully healed from the surgery and he was still on heavy pain medication.

44. Musselman instructed Cusimano to work that night anyway.

45. That night, August 23rd, Cusimano was attacked by two men inside Mosaic.

46. Because of Cusimano's shoulder injury and heavy pain medication, he was not able to fend off approximately 30 or more blows directly to his head.

47. While the policemen later were writing tickets to give the assailants, one of the men, already handcuffed, *rushed at Cusimano and tried to head-butt him.*

48. Cusimano defended himself by pushing the attacker's head away.

49. Despite eye witness reports to the contrary, and despite the fact that the police officers did not clearly see the incident – and so indicated in their report – Cusimano was issued a municipal ticket for assault.

50. ECI's security company wrote a report of the incident, which was distributed to ECI's management, Cordish's VP and legal counsel, and others the next day, alleging that Cusimano had attacked a helpless man in handcuffs.

51. Upon receiving the report, ECI/Cordish/Lounge KC was obligated by its own written procedures to conduct an investigation of the incident, since such incidents are not "uncommon" in the business of operating an entertainment district, and personnel are frequently involved because "breaking up fights" is a part of their jobs.

52. ECI/Cordish/Lounge KC failed to conduct any investigation of the incident.

53. ECI/Cordish/Lounge KC did not even interview Cusimano himself about the incident.

7

54. ECI/Cordish/Lounge KC did not interview the one witness who saw the attack coming from just a few feet away, rushed to Cusimano's defense, and later reported to Security to make himself available for interviewing or a statement.

55. Cusimano was thereafter told by ECI officers that he was placed on paid leave for two to three weeks while they "figured out" the situation, and to give more time for his shoulder to heal.

56. Approximately 7 to 10 days later, ECI, through its employee Jim Watry, terminated Cusimano from all of his positions, stating no reasons therefore.

57. Lounge KC thereafter hired a Hispanic/Latino General Manager to replace Cusimano.

58. The Hispanic General Manager was consistent with the new music genre being played, and appeared to be consistent with the "new face" of the Mosaic.

59. The Hispanic General Manager was also consistent with the efforts to "lighten up" Mosaic so it was no longer so welcoming for African Americans.

60. ECI's Watry, at or shortly after the time Cusimano was terminated, ordered Cusimano to sign a "severance agreement."

61. The "severance agreement" did not contain any severance benefits for Cusimano.

62. The severance agreement was largely made up of a Confidentiality Agreement preventing Cusimano from ever disclosing anything he had witnessed at the Living Room, Mosaic, or Power and Light.

63. Cusimano refused to sign the document containing the Confidentiality clause.

64. A few days later, another ECI employee, Jake Miller, called Cusimano, pressuring him to sign the agreement; Cusimano again refused.

65. Miller subsequently took a threatening tone with Cusimano, telling him the following:

8

> **If Cusimano did not sign the Severance Agreement (with its Confidentiality Clause), ECI/Cordish/Lounge KC would report to its insurance company that Mosaic was short in cash, and Cusimano would then be criminally prosecuted for stealing.**

66. This was the very first time that Cusimano had ever heard that cash was allegedly missing from Mosaic.

67. Cusimano thereafter sent a Missouri Service Letter Request to Mosaic, asking Mosaic pursuant to Missouri law to state the duration and nature of his services, and the reasons for his termination.

68. Mosaic responded on or about November 13, 2013, asserting that Cusimano was terminated for two reasons: 1) for the "physical altercation" on August 23 that resulted in Cusimano "being charged *criminally* with non-aggravated assault," and 2) for Cusimano's "failure to adhere to Mosaic Lounge's cash handling procedures."

69. Cordish/ECI, through its manager Nick Benjamin, thereafter offered to rehire Cusimano at $50,000 annual salary, with the position guaranteed for one year, *if Cusimano would sign the Confidentiality Agreement.*

70. Cusimano declined the offer of rehire.

**COUNT I – Violation of Missouri Service Letter Statute Against Lounge KC**

71. Cusimano sent Lounge KC a request for a Service Letter pursuant to R.S.Mo.290.140.

72. Lounge KC responded to the request by letter dated November 13, 2013, attached hereto as Exhibit A.

73. Lounge KC's letter fails to set forth the true reasons for terminating Cusimano.

74. Lounge KC also fails to accurately set forth the duration of employment of Cusimano.

75. Cusimano has applied for employment and presented the Missouri Service Letter Reply to potential employers in the course thereof.

9

76. Though qualified for the positions for which he has applied, Cusimano has been repeatedly refused employment, based on the reasons for discharge set forth in Lounge KC's letter.

77. As a result of the erroneous letter, Cusimano has been unable to obtain a new job, and has suffered substantial lost income for now and for the foreseeable future.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award actual and punitive damages in his favor and against Lounge KC in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT II – Defamation Against Lounge KC

78. Lounge KC issued a written statement concerning Cusimano which it knew would be presented *to prospective employers* of Cusimano.

79. Lounge KC stated therein that Cusimano had been criminally charged with assault.

80. Lounge KC stated therein that Cusimano failed to "comply with cash handling procedures" while managing operations at Mosaic Club.

81. Cusimano has not in fact been "criminally" charged with assault as a result of the incident which occurred on August 23, 2013.

82. Likewise, Cusimano did not in fact "fail to comply with cash handling procedures" while he worked at Mosaic.

83. Lounge KC made such statements knowing they were false, or with reckless or negligent disregard for the truth thereof, and/or to apply duress upon him so that he would sign Lounge KC's Confidentiality Agreement and not divulge the massive civil rights violations he had observed and been forced to comply with at Power and Light.

10

84.    As a result of the defamatory statements made by Lounge KC *to prospective employers* of Cusimano, Cusimano has been denied employment, suffered damage to his personal and professional reputation, endured mental suffering, and more.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award actual and punitive damages in his favor and against Lounge KC in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT III – Defamation Against Lounge KC

85.    An unknown person and/or persons acting on behalf of Lounge KC disseminated verbal and/or written statements *within ECI, Cordish, Lounge KC*, and other related entities to the effect that Cusimano had been criminally charged with assault in connection with the incident which occurred on August 23rd as described above.

86.    Cusimano was not "criminally" charged with assault as a result of the incident which occurred on August 23, 2013.

87.    Said unknown person and/or persons disseminated verbal and/or written statements within the three companies and other related entities to the effect that Cusimano had "failed to comply with cash handling procedures" while managing operations at Mosaic Club.

88.    Cusimano did not in fact "fail to comply with cash handling procedures" while he worked at Mosaic.

89.    Said unknown person and/or persons issued verbal and/or written statements within the three companies and other related companies alleging that Cusimano had stolen, over the course of several months, some $30,000 in "change deposits" out of the safe at Mosaic.

90.    Cusimano did not steal any change deposits out of the safe at Mosaic.

11

91. Each of the above false statements was made for the purpose of damaging Cusimano's reputation within the three companies and other related entities, and to cause the discharge of Cusimano from employment.

92. Such statements caused damage to the reputation of Cusimano within the three companies and other related entities.

93. Such statements caused the discharge of Cusimano from employment.

94. Such statements were also fabricated and disseminated as described above so that Cordish/ECI/Lounge KC could use the threat of prosecution for theft by its insurance company in order to intimidate Cusimano into signing the Confidentiality Agreement regarding the discriminatory practices he had seen and been forced to comply with while employed at Power and Light.

95. Lounge KC made each of the above statements knowing they were false, or with reckless or negligent disregard for the truth thereof, and/or with malice.

96. As a result of the defamatory statements made by Lounge KC, Cusimano suffered damage to his professional reputation, was fired, suffered and suffers lost income, suffered and suffers lost benefits such as health insurance, endured and still endures humiliation and mental suffering, and more.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award actual and punitive damages in his favor and against Lounge KC in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT IV – Defamation By ECI

12

97.   An unknown person and/or persons acting on behalf of ECI disseminated verbal and/or written statements *within ECI, Cordish, Lounge KC*, and other related entities to the effect that Cusimano had been criminally charged with assault in connection with the incident which occurred on August 23rd as described above.

98.   Cusimano was not "criminally" charged with assault as a result of the incident which occurred on August 23, 2013.

99.   Said unknown person and/or persons disseminated verbal and/or written statements *within the three companies* and other related entities to the effect that Cusimano had "failed to comply with cash handling procedures" while managing operations at Mosaic Club.

100.  Cusimano did not in fact "fail to comply with cash handling procedures" while he worked at Mosaic.

101.  Said unknown person and/or persons issued verbal and/or written statements *within the three companies* and other related companies alleging that Cusimano had stolen, over the course of several months, some $30,000 in "change deposits" out of the safe at Mosaic.

102.  Cusimano did not steal any change deposits out of the safe at Mosaic.

103.  Each of the above false statements were made for the purpose of damaging Cusimano's reputation *within the three companies and other related entities*, and to cause the discharge of Cusimano from employment.

104.  Such statements caused damage to the reputation of Cusimano within the three companies and other related entities.

105.  Such statements caused the discharge of Cusimano from employment.

106.  Such statements were also fabricated and disseminated as described above so that Cordish/ECI/Lounge KC could use the threat of prosecution for theft by its insurance

13

lectronically Filed - Jackson - Kansas City - March 03, 2014 - 05:16 PM

company in order to intimidate Cusimano into signing the Confidentiality Agreement regarding the discriminatory practices he had seen and been forced to comply with while employed at Power and Light.

107. ECI made each of the above statements knowing they were false, or with reckless or negligent disregard for the truth thereof, and/or with malice.

108. As a result of the defamatory statements made by ECI, Cusimano suffered damage to his professional reputation, was fired, suffered and suffers lost income, suffered and suffers lost benefits such as health insurance, endured and still endures humiliation and mental suffering, and more.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award actual and punitive damages in his favor and against ECI in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT V – Defamation by Cordish

109. An unknown person and/or persons acting on behalf of Cordish disseminated verbal and/or written statements *within ECI, Cordish, Lounge KC,* and other related entities to the effect that Cusimano had been criminally charged with assault in connection with the incident which occurred on August 23rd as described above.

110. Cusimano was not "criminally" charged with assault as a result of the incident which occurred on August 23, 2013.

111. Said unknown person and/or persons disseminated verbal and/or written statements *within the three companies and other related entities* to the effect that Cusimano had "failed to comply with cash handling procedures" while managing operations at Mosaic Club.

14

112. Cusimano did not in fact "fail to comply with cash handling procedures" while he worked at Mosaic.

113. Said unknown person and/or persons issued verbal and/or written statements *within the three companies and other related companies* alleging that Cusimano had stolen, over the course of several months, some $30,000 in "change deposits" out of the safe at Mosaic.

114. Cusimano did not steal any change deposits out of the safe at Mosaic.

115. Each of the above false statements was made for the purpose of damaging Cusimano's reputation *within the three companies and other related entities*, and to cause the discharge of Cusimano from employment.

116. Such statements caused damage to the reputation of Cusimano within the three companies and other related entities.

117. Such statements caused the discharge of Cusimano from employment.

118. Such statements were also fabricated and disseminated as described above so that Cordish/ECI/Lounge KC could use the threat of prosecution for theft by its insurance company in order to intimidate Cusimano into signing the Confidentiality Agreement regarding the discriminatory practices he had seen and been forced to comply with while employed at Power and Light.

119. Cordish made each of the above statements knowing they were false, or with reckless or negligent disregard for the truth thereof, and/or with malice.

120. As a result of the defamatory statements made by Cordish, Cusimano suffered damage to his professional reputation, was fired, suffered and suffers lost income, suffered and suffers lost benefits such as health insurance, endured and still endures humiliation and mental suffering, and more.

15

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award him actual and punitive damages in his favor and against Cordish in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT VI – Assault Against Lounge KC

121.    Cusimano incorporates all allegations contained in Count III above.

122.    Through Cordish's intentional conduct in using a rabbit against Cusimano on August 23, 2013, Cusimano was reasonably placed in fear of an offensive/harmful touching.

123.    The fear of offensive/harmful touching resulted in suffering and damages to Cusimano.

124.    Cusimano is therefore entitled to damages therefore for assault, pursuant to Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against Lounge KC and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT VII – Battery Against Lounge KC

125.    As General Manager of three Clubs at various times, and as Security Liaison for the Living Room, Plaintiff Cusimano was a very visible face at Power and Light.

126.    Cusimano was also well known to and very popular with patrons of Power and Light, especially African American patrons, due to the fact that he was a "welcoming" African American presence and personality in the Living Room, in various clubs, and around Power and Light in general.

127.    In order to accomplish its goal to "lighten up" Power and Light, Lounge KC decided it had to remove Cusimano as a highly visible and welcoming African American presence.

16

128. Lounge KC also decided it had to terminate Cusimano because it knew that Cusimano would not tolerate the additional efforts Cordish/ECI/Lounge KC was preparing to undertake to "lighten up" Power and Light (these efforts include the total exclusion of blacks from Mosaic, and the use of a scheme whereby when blacks called Mosaic to reserve a table, if their diction/speech was recognized as "African American," they were told the Club was completely booked for the night requested; similarly, if their voice was "unrecognized as black" and they were given a table, when they appeared and requested their reserved table, they were informed, "There must be some mistake," or "We have no table in your name, you must have called a different club."

129. Because Cusimano had been a successful and respected employee at three clubs in the Living Room and as Security Liaison, Lounge KC knew it would be very controversial for it to terminate Cusimano's employment, and that it might face a discrimination lawsuit if it terminated him without good reason.

130. Lounge KC accordingly recruited two persons to serve as a "rabbit" of sorts against Cusimano, with said rabbit attacking Cusimano when he couldn't defend himself on August 23rd when Cusimano was debilitated by surgery and heavy medication.

131. The use of a "rabbit" against Cusimano was for the purpose of manufacturing a reason to terminate him.

132. In setting up the attack upon Cusimano, Lounge KC itself became a perpetrator in the attack.

133. During the attack Cusimano suffered further injury to his shoulder in the attack plus physical injuries to his head and face, extreme pain and suffering, and humiliation in front of his co-workers and patrons of the Living Room.

17

134. Through the above use of a "rabbit" on Cusimano, Lounge KC intended to cause an offensive/harmful touching of Cusimano, Cordish/ECI set in motion a force which resulted in an offensive/harmful touching of Cusimano, and caused Cusimano to suffer physical injuries, pain, suffering, humiliation and embarrassment as a result thereof.

135. As a result of the brutal attack upon Cusimano, Lounge KC caused an improper "firing" of Cusimano, and his resulting loss of job, income, benefits, reputation and more.

136. This intentional tort at the hands of Lounge KC entitles Cusimano to actual damages plus punitive damages under Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against Lounge KC and award him actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT VIII – Assault Against ECI

137. Cusimano incorporates all prior allegations.

138. Through Cordish's intentional conduct in using a rabbit against Cusimano on August 23, 2013, Cusimano was reasonably placed in fear of an offensive/harmful touching.

139. The fear of offensive/harmful touching resulted in suffering and damages to Cusimano.

140. Cusimano is therefore entitled to damages for assault, pursuant to Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against ECI and award him actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT IX – Battery Against ECI

18

141.  As General Manager of three Clubs at various times in the Living Room, and as Security Liaison for the Living Room, Plaintiff Cusimano was a very visible face at Power and Light.

142.  Cusimano was also well known to and very popular with patrons of the Living Room, especially African American patrons, due to the fact that he was a "welcoming" African American presence and personality in the Living Room and various clubs.

143.  In order to accomplish its goal to "lighten up" Power and Light, ECI decided it had to remove Cusimano as a highly visible and welcoming African American presence.

144.  ECI also decided it had to terminate Cusimano because it knew that Cusimano would not tolerate the additional efforts Cordish/ECI/Lounge KC was preparing to undertake to "lighten up" Power and Light (these efforts include the total exclusion of blacks from Mosaic, and the use of a scheme whereby when blacks called Mosaic to reserve a table, if their diction/speech was recognized as "African American," they were told the Club was completely booked for the night requested; similarly, if their voice was "unrecognized as black" and they were given a table, when they appeared and requested their reserved table, they were informed, "There must be some mistake," or "We have no table in your name, you must have called a different club."

145.  Because Cusimano had been a successful and respected employee at three clubs in the Living Room and as Security Liaison, ECI knew it would be very controversial for it to terminate Cusimano's employment, and that it might face a discrimination lawsuit if it terminated him without good reason.

19

146.    ECI accordingly recruited two persons to serve as a "rabbit" of sorts against Cusimano, by attacking Cusimano when he couldn't defend himself (and they therefore couldn't get hurt) on August 23rd when Cusimano was debilitated by surgery and heavy medication.

147.    The use of a "rabbit" against Cusimano was for the purpose of manufacturing a reason to terminate him.

148.    In setting up the attack upon Cusimano, ECI became a perpetrator of the attack.

149.    During the attack Cusimano suffered further injury to his shoulder in the attack plus physical injuries to his head and face, extreme pain and suffering, and humiliation in front of his co-workers and patrons of the Living Room.

150.    Through the above use of a "rabbit" on Cusimano, ECI intended to cause an offensive/harmful touching of Cusimano, ECI set in motion a force which resulted in an offensive/harmful touching of Cusimano, and ECI therefore caused Cusimano to suffer physical injuries, pain, suffering, humiliation and embarrassment as a result thereof.

151.    As a result of the brutal attack upon Cusimano, Cordish/ECI/Lounge KC caused an improper "firing" of Cusimano, and his resulting loss of job, income, benefits, reputation and more.

152.    This intentional tort at the hands of ECI entitles Cusimano to actual damages plus punitive damages under Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against ECI and award him actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT X – Assault Against Cordish

20

153.   Cusimano incorporates all allegations previously stated.

154.   Through Cordish's intentional conduct in using a rabbit against Cusimano on August 23, 2013, Cusimano was reasonably placed in fear of an offensive/harmful touching.

155.   The fear of offensive/harmful touching resulted in suffering and damages to Cusimano.

156.   Cusimano is therefore entitled to damages therefore for assault, pursuant to Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against Cordish and award him actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT XI – Battery Against Cordish

157.   As General Manager of three Clubs at various times, and as Security Liaison for the Living Room, Plaintiff Cusimano was a very visible face at Power and Light.

158.   Cusimano was also well known to and very popular with patrons of the Living Room, especially African American patrons, due to the fact that he was a "welcoming" African American presence and personality in the Living Room and various clubs.

159.   In order to accomplish its goal to "lighten up" Power and Light, Cordish decided it had to remove Cusimano as a highly visible and welcoming African American presence.

160.   Cordish also decided it had to terminate Cusimano because it knew that Cusimano would not tolerate the additional efforts Cordish was preparing to undertake to "lighten up" Power and Light (these efforts include the total exclusion of blacks from Mosaic, and the use of a scheme whereby when blacks called Mosaic to reserve a table, if their diction/speech was recognized as "African American," they were told the Club was completely booked for the night requested; similarly, if their voice was "unrecognized as black" and they were given

21

a table, when they appeared and requested their reserved table, they were informed, "There must be some mistake," or "We have no table in your name, you must have called a different club."

161.    Because Cusimano had been a successful and respected employee at three clubs in the Living Room and as Security Liaison, Cordish knew it would be very controversial for it to terminate Cusimano's employment, and that it might face a discrimination lawsuit if it terminated him without good reason.

162.    Cordish accordingly recruited two persons to serve as a "rabbit" of sorts against Cusimano, by attacking Cusimano when he couldn't defend himself (and they therefore couldn't get hurt) on August 23rd when Cusimano was debilitated by surgery and heavy medication.

163.    The use of a "rabbit" against Cusimano was for the purpose of manufacturing a reason to terminate him.

164.    In setting up the attack upon Cusimano, Cordish became a perpetrator of the attack.

165.    During the attack Cusimano suffered further injury to his shoulder in the attack plus physical injuries to his head and face, extreme pain and suffering, and humiliation in front of his co-workers and patrons of Mosaic and of the Living Room.

166.    Through the above use of a "rabbit" on Cusimano, Cordish intended to cause an offensive/harmful touching of Cusimano, Cordish set in motion a force which resulted in an offensive/harmful touching of Cusimano, and Cordish therefore caused Cusimano to suffer physical injuries, pain, suffering, humiliation and embarrassment as a result thereof.

167.    As a result of the brutal attack upon Cusimano, Cordish caused an improper "firing" of Cusimano, and his resulting loss of job, income, benefits, reputation and more.

22

168. This intentional tort at the hands of Cordish entitles Cusimano to actual damages plus punitive damages under Missouri law.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and against Cordish and award him actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT XII – Defamation By First Response

169. An unknown person and/or persons acting on behalf of First Response disseminated verbal and/or written statements through an incident report, through *First Response, ECI, Cordish, Lounge KC*, and other related entities, to the effect that Cusimano had reached around a police officer to strike a man in handcuffs.

170. The report falsely made it appear Cusimano was the aggressor.

171. The report falsely stated that Cusimano reached around a police officer.

172. The report failed to state that Cusimano was acting in self-defense in the face of an oncoming headbutt.

173. Each of the above false statements were made for the purpose of damaging Cusimano's reputation *within the Power and Light District and the four companies mentioned above, with other related entities*, and to cause the discharge of Cusimano from employment.

174. Such statements caused damage to the reputation of Cusimano within the District, companies and other potentially related entitites.

175. Such statements caused the discharge of Cusimano from employment.

176. First Response, through its agents, made the statements knowing they were false, or with reckless or negligent disregard for the truth thereof, and/or with malice.

23

177. As a result of the defamatory statements made by First Response, Cusimano suffered damage to his professional reputation, was fired, suffered and suffers lost income, suffered and suffers lost benefits such as health insurance, endured and still endures humiliation and mental suffering, and more.

WHEREFORE, Glen Cusimano respectfully prays the Court issue Judgment in his favor and award him actual and punitive damages in his favor and against First Response in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## II. REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury trial pursuant to Missouri law.

Respectfully submitted,

Dickens Law, LLC
Linda S. Dickens
Missouri Bar 31331
Austin R. Johnston
Missouri Bar No. 65992
27 Corporate Woods
Suite 190
10975 Grandview Drive
Overland Park, KS 66210
Direct: 913-486-9908
Fax: 913-317-1416
**Counsel for Plaintiff**

24